## CITY OF DETROIT LAKES v. TRAVELERS INDEMNITY COMPANY.[1]

October 8, 1937.

No. 31,304.

*Murphy, Johanson & Winter,* for appellant.
*Lowell W. Benshoof* and *H. N. Jenson,* for respondent.

STONE, JUSTICE.

Plaintiff having got a verdict in this suit on a "machinery policy" of insurance issued by defendant, the latter appeals from the judgment. There was no motion for a new trial, and the only question is whether the judgment has adequate support in the evidence.

The damages wanted by plaintiff are for a "breakdown" of a 1,000-watt turbine steam engine in plaintiff's municipally owned power plant. Plaintiff's claim is that the loss was caused by an

[1]Reported in 275 N. W. 371.

"accident" within the definition of the policy which declares on that point as follows:

"Accident shall mean a sudden and accidental breaking, deforming, burning out or rupturing of the object or any part thereof, which manifests itself at the time of its occurrence by immediately preventing continued operation or by immediately impairing the functions of the object and which necessitates repair or replacement before its operation can be resumed or its functions restored * * *."

After the turbine had been in operation for some time and there had been some "sticking" of the valves, it was taken down for inspection. (Because of a lamentable absence of demonstrative evidence picturing the machine by photograph or diagram, we cannot be sure of accuracy of description.) It appears that what may be termed the steam chest consists of two members, an upper and a lower, the whole being contained within a cover of some sort. When that cover was removed, it was discovered that the upper member, a casting weighing some 1,700 pounds, had become deformed and cracked by expansion. The cracks were 1/32 of an inch in width at the outer edge or "flange" and extended inward toward the center. The fractured casting was oblong in shape. Along its median line were the vertical, cylindrical holes through which the valve stems operated.

The sticking of the valves before the inspection was ascribed to the oil then in use. However, an expert witness testified that the deformation and cracking of the casting would cause a sticking of the valves. Testimony aside, it is obvious that any distortion of the casting, due to warping or cracking or both, the influence of which would reach any one or more of the vertical channels for the valve stems, would impair the functioning of the valves. It appears from the evidence that the ruptured and distorted condition of the casting necessitated replacement, not necessarily before operation of the engine could be resumed, but as a practical matter before it could operate with "functions restored" to their designed standard of operation.

We need go no further in order safely to affirm that the evidence warrants the judgment. Concededly there was a "rupturing" of the casting. Although the factors of causation may have been gradual and even slow in operation, the rupturing itself doubtless was sudden, at least in its beginning. Anyway, the jury was easily within the ambit of reasonable inference in so finding.

The next question is whether the lesion manifested itself at the time of its occurrence (in the language of the policy) "by immediately preventing continued operation or by immediately impairing the functions of the object." In view of the inevitable tendency of the distortion and fracture of the casting to interfere with valve action, and with the aid, if needed, of the testimony that the condition would cause just that result, we conclude that the verdict and judgment are supported by the evidence.

Judgment affirmed.