No. 12629

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

_____

ALBERT L. RIEFFLIN et al.,

            Plaintiffs and Appellants,

-vs-

THE HARTFORD STEAM BOILER
INSPECTION AND INSURANCE
COMPANY, a Corporation,

            Defendant and Respondent.

_____

Appeal from:  District Court of the Fourth Judicial District,
              Honorable E. Gardner Brownlee, Judge presiding.

Counsel of Record:

    For Appellants:

        Julio K. Morales argued, Missoula, Montana

    For Respondent:

        Garlington, Lohn and Robinson, Missoula, Montana
        Gary L. Graham argued, Missoula, Montana

_____

                Submitted:  March 21, 1974

                Decided: APR 2 5 1974

Filed: APR 2 5 1974

*Thomas J. Kearney*
                    Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Plaintiffs and appellants, Albert L., Robert L., and Margaret A. Riefflin, d/b/a The Missoula Motel, hereinafter referred to as plaintiffs or Riefflins, bring this appeal from a judgment of the district court of Missoula County in their favor in the amount of $1,332.48 against defendant and respondent, The Hartford Steam Boiler Inspection and Insurance Company, a Corporation, hereinafter referred to as Hartford. The district court judgment awarded costs of suit amounting to $197.24 to defendant Hartford.

This litigation arises out of a contract of insurance existing between these litigants which covered a cast iron boiler located in the Missoula Motel, owned by the Riefflins. The boiler consisted of ten center sections and two end sections and was used to heat the motel. On February 1, 1970, one of the end sections cracked. Hartford performed an inspection of the boiler and paid a claim in the amount of $440.43 for replacement of the cracked section. By letter dated March 26, 1971, Hartford advised the Riefflins:

> "In view of the amount of scale in the damaged section, it can be expected that the remaining sections in the boiler may also contain excessive scale and are subject to future cracking in a similar fashion.
>
> "Since this boiler has been in service less than 3 years, the amount of internal scale would indicate to us that an excessive amount of make up water is being required to maintain the water level. Excessive feedwater make up will result in rapid scaling; therefore, we strongly recommend that the entire heating system be investigated for leakage or other conditions that are resulting in excessive or loss of water in the system.

"As a safeguard against possible cracking of additional sections, we strongly advise that the boiler be opened up either by removing wash out plugs or disconnecting pipe connections to observe the internal surfaces. We are advising our Inspector to contact you with regard to such an inspection sometime following the end of the present heating season. If excessive scale is detected, it may then be necessary to remove the deposits by chemical means along with washing and flushing of the individual sections."

During the summer of 1971 the Riefflins had the boiler chemically cleaned at their expense in the amount of $911.96. Neither Hartford nor its inspector specified who would bear the cost of this cleaning.

On or about October 18, 1971, an internal boiler section cracked. Again Hartford performed an inspection and acknowledge liability in the amount of $818.49 for replacement of the cracked section. While the boiler was dismantled for repair, a third cracked section was discovered on November 30, 1971. By letter dated December 6, 1971, Hartford advised the Riefflins:

"We are aware that the boiler had been dismantled during the Summer and the sections had been chemically treated to remove the scale; it is quite evident that the cleaning process was not successful and in view of the density of the deposits and their location in the sections, it is doubtful that the deposits can ever be removed.

"Under the circumstances, we can only recommend the replacement of all intermediate sections containing scale or that the entire boiler be replaced, depending on the expense involved. It has been our experience that it will be less expensive to replace the entire boiler.

"The Inspector reports that a new boiler has been placed on order and that it will be installed to replace the present boiler when delivered.

"In view of the trouble that has been experienced with this boiler in the past year as the result of daily internal scaling, we again strongly advise that the

entire heating system be checked for leakage or loss of water from the system. Any leakage found should be repaired to minimize trouble of this nature in the future."

The new boiler, ordered by the Riefflins prior to receipt of the above quoted letter, was installed in late February of 1972 at a cost to them of $4,815.00. Again neither Hartford nor its inspector specified who would bear the cost of this replacement.

While Riefflins were awaiting arrival and installation of their new boiler, the old boiler continued in use. It appears that during this period additional sections of the old boiler cracked, leaving only eight operational sections when the boiler was replaced in February. No proofs of loss were received by Hartford from Riefflins on any of these additional cracked sections.

Riefflins' complaint claimed damages of $4,500.00 caused by frozen heating pipes and appliances and loss of $3,000 motel income during the period from October 1, 1971 to March 1, 1972. Riefflins also sought judgment from Hartford for $911.96, the cost of cleaning the boiler; $4,815.00, the cost of replacing the entire boiler; and $818.49, the cost of replacing the second cracked section.

Hartford made an offer of judgment in the sum of $1,332.48 representing its liability for replacement costs of the second cracked boiler section in the sum of $818.49 and the third cracked boiler section in the sum of $513.99, which was based on a plumber's estimate.

The contract of insurance, introduced as plaintiffs' exhibit one, required written notice and proof of loss to Hartford as

- 4 -

soon as practicable after an accident occurred. The policy

defined "accident" for purposes of its coverage as:

> "* * * a sudden and accidental breakdown of the
> Object, or a part thereof, which manifests itself
> at the time of its occurrence by physical damage
> to the Object that necessitates repair or replace-
> ment of the Object or a part thereof; but Accident
> shall not mean (a) depletion, deterioration, cor-
> rosion, or erosion of material * * *."

The policy specifically excluded:

> "* * * loss from delay or interruption of business
> or manufacturing or process, (f) loss from lack of
> power, light, heat, steam or refrigeration and (g)
> loss from any other indirect result of an Accident."

Plaintiffs bring this appeal from the judgment and order

of the district court, and from its denial of their post trial

motions, assigning the following issues:

(1) Whether the trial court erred in denying (a larger)

judgment to the plaintiffs and against the defendant.

(2) Whether the trial court erred in denying plaintiffs'

motion to amend and make additional findings of fact and con-

clusions of law.

(3) Whether the trial court erred in denying plaintiffs'

motion for a new trial on the ground the evidence did not justify

the verdict.

(4) Whether the trial court erred in failing to grant

the motion for a new trial on the grounds that error was com-

mitted during trial by denying plaintiffs' presentation of

evidence regarding cracking of boiler sections which took place

subsequent to October 31, 1971.

The arguments propounded by plaintiffs in support of these

issues concern primarily the legal operation of the insurance contract between the litigants and collaterally the effect of alleged negligence by Hartford in its performance of the boiler inspections and proposed application of the doctrine of equitable estoppel against Hartford.

Regarding the primary argument, the trial court found that the buildup of scale within the boiler was not "sudden and accidental" and was not a "breakdown of the object" which was manifested at the time of the accident "by physical damage to the object that necessitates repair or replacement of the object" and hence was not an "accident" under the terms of the policy. Consequently, the trial court ruled there was no coverage under the policy of the Riefflins' expenses of $911.96 for the boiler cleaning done during the summer of 1971 or of their expenses of $4,815.00 for the boiler replacement done in February of 1972.

Based upon the record before us, we concur with these rulings of the trial court. Both these actions were undertaken by the Riefflins in an attempt to remedy the internal scaling problem. In interpreting and applying insurance contracts, the Montana rule has been to use the common rather than some technical usage or meaning of definitional terms in the policy, Wills v. Midland Nat. L. Ins. Co., 108 Mont. 536, 91 P.2d 695. The internal boiler scaling problem was not an accident under the usual meaning of the term as defined in the insurance policy issued by Hartford.

Hartford has paid or is now obligated to pay, under the

district court's judgment, the replacement cost of three cracked boiler sections. The trial court found that failure of the Riefflins to submit notifications of accident and proof of loss as soon as practicable, as required by the policy, barred any claims for reimbursement for sections which may have cracked subsequent to these first three. Appellants rely on the case of Staggers v. U.S.F.& G. Co., 159 Mont. 254, 496 P.2d 1161, in which this Court held that "substantial compliance" by insured in furnishing insurer with proof of loss as required for recovery under a fire insurance policy was sufficient. The existence of "substantial compliance" in Staggers was predicated upon the fact that the insureds filled out and submitted statement of loss forms which the insurer did not object to for almost two years. In the instant case the insureds filed nothing for nearly two years concerning the cracked boiler sections in question. However, the Riefflins contend that their insurer knew of the prior scale accumulation problem and of the three boiler sections which had cracked previously and therefore should have anticipated the later cracking of boiler sections. To interpret the concept of substantial compliance this broadly would eliminate the need for any compliance with insurance policy provisions. We find that the trial court was correct in its ruling that the Riefflins failed to comply with the proof of loss requirements for any except the first three cracked boiler sections.

The trial court also found, and we concur, that the insurance specifically excluded from coverage the incidental damages

from frozen pipes claimed in the amount of $4,500 and from interruption of business losses claimed in the amount of $3,000.

The record before us does not support appellants' allegations of negligence on the part of Hartford in conducting the inspections of the boiler. Under the terms of the insurance contract Hartford reserved the right but did not assume the duty to inspect. As a general principle of our law of torts, however, once Hartford undertook to inspect the boiler and make recommendations, they were obliged to do so in a nonnegligent manner. The hereinabove quoted passages of letters from Hartford to Riefflins recommend the "excessive feedwater" problem be remedied in order to correct the scaling. There is no evidence in the record that these recommendations were followed until it became necessary to replace the entire boiler. The plumbing contractor who installed the new boiler testified that he used a water softener and chemical additives in the new feedwater system, to help relieve scaling. There is no testimony that these installations would have corrected the scaling condition existing in the old boiler, or that a boiler not using excessive amounts of feedwater would require them.

The appellants contention concerning application of equitable estoppel is defective in the first instance through their failure to raise the issue before the trial court, State Highway Comm. v. Voyich, 142 Mont. 355, 384 P.2d 765, and in the second instance the record discloses no statement or conduct on the part of Hartford amounting to a misrepresentation, Mundt v. Mallon, 106 Mont. 242, 76 P.2d 326.

- 8 -

Finally, concerning the trial court's ruling assessing costs against plaintiffs and appellants Riefflins, Rule 68, M.R.Civ.P. provides in pertinent part:

> "* * * If the judgment finally obtained by the offeree is not more favorable than the offer (of judgment), the offeree must pay the costs incurred after the making of the offer. * * *"

We find Rule 68, M.R.Civ.P. clearly applicable and correctly applied by the trial court.

We find no error in the judgment of the district court, and it is hereby affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices