**DAYBREAK FOODS, INC., Appellant,**

v.

**WESTERN NATIONAL MUTUAL INSURANCE CO.,
Respondent.**

No. C3–93–929.

Court of Appeals of Minnesota.

Nov. 16, 1993.

Review Denied Jan. 14, 1994.

Gerald W. Von Korff, Rinke–Noonan, St. Cloud, for appellant.

James T. Martin, Dan T. Ryerson, Gislason, Martin & Varpness, Edina, for respondent.

Considered and decided by RANDALL, P.J., and CRIPPEN and SCHULTZ,* JJ.

## OPINION

SCHULTZ, Judge.

Appellant Daybreak Foods, Inc. contests a directed verdict for respondent Western National Mutual Insurance Co. that damage caused by an inoperative refrigeration valve was not an "accident" under the policy. We affirm.

## FACTS

Daybreak is a wholesaler of raw liquid eggs. In 1990, it purchased a reconditioned ammonia cooling system to refrigerate liquid eggs in silos at its facilities in Long Prairie, Minnesota. Egg product is initially chilled to a temperature below 40 degrees Fahrenheit and then stored in silos where chilled ammonia circulates in wall jackets. It is essential that liquid eggs be stored at temperatures below 40 degrees to prevent spoilage.

On April 4, 1991, an employee discovered that one silo's temperature had risen to 48 degrees. On April 6, a supervisor noted that the temperature was 40 degrees and accordingly, the affected egg product was rechilled and stored at sub–40 degree temperatures. In the following days, shipments of the affected product passed USDA inspections at the Long Prairie plant and were shipped to various destinations in tanker trucks. On April 9, 10, and 11, 1991, the shipments were rejected at Nebraska and Minnesota destinations by USDA inspectors. Daybreak was able to salvage the product by having it dried, processed, and sold as pet food at a reduced price. The value of the loss to Daybreak was approximately $94,000, plus an additional $16,000 for other consequential damage.

A mechanical engineer subsequently determined that a rubber valve gasket fractured, causing coolant to fail to circulate properly within the system. Daybreak made a claim under the consequential loss endorsement to its boiler and machinery insurance policy issued by Western. Western ultimately denied the claim as nonaccidental under the policy.

After a summary judgment motion, the trial court interpreted the policy to mean that if the valve failure was caused by deterioration or leakage, then no coverage existed under the endorsement. The trial court also determined, however, that the cause of valve failure presented a fact issue for trial. Daybreak's expert testified at trial that the cause of the valve failure was a sudden fracturing of a section of the rubber valve seal caused by cracks that had developed over a period of time. The trial court then granted Western's motion for a directed verdict based upon nonaccidental causation.

## ISSUE

Did the trial court err in directing a verdict that the failure of the valve was excluded, as a matter of law, from coverage for an "accident"?

## ANALYSIS

In an appeal of a directed verdict, we are presented with a legal question as to whether the evidence was sufficient to present a question of fact to the jury. *Peterson v. Little–Giant Glencoe Portable Elevator Div. of Dynamics Corp. of America,* 366 N.W.2d 111, 115 (Minn.1985). Evidence is evaluated from the viewpoint most favorable to the nonmoving party. *Id.* Interpretation of an insurance contract is a question of law, subject to de novo review on appeal. *Grossman v. American Family Mut. Ins. Co.,* 461 N.W.2d 489, 493 (Minn.App.1990), *pet. for rev. denied* (Minn. Dec. 20, 1990).

The boiler and machinery policy provides that "[a] Covered Cause of Loss is an 'accident' to an 'object.'" Object includes "any refrigerating or air conditioning vessel" and "[v]alves and fittings." Accident is "a

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

sudden and accidental breakdown of the 'object' or a part of the 'object.'" An accident is not "[d]epletion, deterioration, corrosion or erosion[, or] wear and tear[, or] or leakage at any valve." A consequential loss endorsement was in effect and provided coverage for damage "caused solely by an 'accident' to an 'object.'"

Daybreak's case is premised on its expert's testimony

> that a segment or section of the disk broke out suddenly as the result of stresses and forces imposed upon it in the course of operation of that valve which had initiated as small fissures or cracks which had developed to the point where at some instant in time the remaining holding portion of that segment was not sufficient to withstand the stresses associated with the operating forces and the pressures so that a sudden breakout or separation of that fragment occurred.

Daybreak cites cases from various jurisdictions involving occurrences under boiler and machinery policies, most notably *Lakeshore Marine, Inc. v. Hartford Accident & Indem. Co.*, 164 Ga.App. 417, 296 S.E.2d 418 (1982). There, chlorine gas suddenly escaped from a tank. *Id.*, 296 S.E.2d at 420–21. The occurrence was held to be sudden and accidental even though the disintegration of an O-ring was a contributing cause. *Id.* at 422. The *Lakeshore* court determined that the escape of gas was sudden and that although deterioration and corrosion were excluded events, the policy failed to expressly state that sudden and accidental damage *caused by* such factors was excluded.[1] *Id.*

Contrary holdings include *Louis Meyers & Sons, Inc. v. Affiliated F M Ins. Co.*, 424 F.2d 471, 472 (2d Cir.1970) and *Resorts Int'l, Inc. v. American Home Assurance Co.*, 311 So.2d 806, 807 (Fla.Dist.Ct.App.1975) respectively holding that property damage caused by leakage of steam due to corrosion and a failed air conditioning system caused by corrosion were not covered occurrences. *See*

generally, James M. Hoey, *The Meaning of "Accident" in Boiler and Machinery Insurance and New Developments in Underwriting,* 19 Forum 467, 476 (1984).

■ Ambiguities in a policy are strictly construed against the insurer; however, courts will not create ambiguities where they do not exist in the plain language of a policy. *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). Under the policy here, an accident *to* an object is an insured event, but an accident is not "deterioration" or "leakage at any valve." Thus, under the policy, it is plain that deterioration or leakage *to* a valve is not an insured event. Moreover, it is also clear that, for coverage for consequential damage to exist, the damage must be *"caused* solely by an 'accident.'" (Emphasis added.) Accordingly, we find no ambiguity arising from claimed lack of more definite causation language. The trial court correctly interpreted the policy.

Daybreak did not plead or raise the reasonable expectations doctrine[2] in the proceedings below and it is not directly considered in this appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (issues must be "presented and considered" by the trial court to be reviewed on appeal).

■ Finally, viewing Daybreak's expert's testimony in the light most favorable to Daybreak, the trial court did not err in determining that the evidence was insufficient to present a fact question for the jury. Although the breakout of the disk may have been sudden if viewed entirely in isolation, it was undisputedly the final manifestation of a gradual deterioration process. Therefore, the occurrence is clearly excluded as a nonaccidental risk under the policy.

### DECISION

The trial court did not err in directing a verdict that there was no coverage under the policy.

**Affirmed.**

---

1. Under Minnesota law, the cause of an accident need not be sudden; it is sufficient that the breakdown is sudden. *City of Detroit Lakes v. Traveler's Indem. Co.*, 201 Minn. 26, 28, 275 N.W. 371, 372 (1937). *Detroit Lakes* does not

address the exclusions to "accident" at issue here, however.

2. *See Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d 271 (Minn.1985).

CRIPPEN, Judge (dissenting).

The trial court made a mistake, and our effort to affirm the decision only makes the error more evident.

### 1. Trial court error.

The trial court concluded that there could be no accident if the damaging event was "due to" a deteriorated valve gasket. But the Western National policy does not state a causation requirement of this kind.

It is true that the policy does not provide coverage for replacement of worn machinery or parts. But when a machine breakdown suddenly occurs, this is an accident. The policy covers losses resulting from accident, and it is fundamentally wrong to deny reimbursement for these losses on the theory that the accident had its roots in some nonaccident.

The trial court analysis depends on an addition of language to the policy. The court concluded that once wear and tear occurs (not an accident), resulting events can never constitute an accident. But there is no policy provision that supports this conclusion. The policy says that deterioration is not an accident. It says that sudden losses are accidents. The policy does not say that a sudden loss "due to" or "caused by" deterioration is no longer an accident.

The trial court's policy construction is not justified by policy language. We should also reject the decision because it leads to an absurd result. If we consistently follow the trial court's analysis, coverage under this kind of policy is almost completely precluded. Except in cases of manufactured defects, machinery defects almost always trace back to some deterioration of critical parts. Appellant did not purchase a manufacturing defects policy, but a boiler and machinery policy insuring it against accidental losses. Needless to say, respondent would be pleased to have the policy construed as one covering only manufacturing defects. Losses of this kind routinely involve prospects for subrogation claims against a manufacturer or supplier.

Incidentally, appellant did not go beyond the scope of this appeal when it called attention to its reasonable expectations. Appellant does not submit this concept as a new claim of coverage, a proposal that disregards policy language. Rather, appellant merely notes its expectations to support the argument that we should give effect to the most reasonable construction of policy language.

### 2. Appellate decision.

We propose to affirm the trial court because damage covered under the Western National policy must be "caused by" an accident. But this portion of the policy merely dictates that we correctly determine what constitutes an accident. When an accident is proven, the quoted language of the policy does not suggest that the accident be overlooked if it has roots in a nonaccident. It is evident that the trial court's mistake can only be overlooked by misuse of an unrelated causation clause in the policy.

### 3. Other considerations.

a. The valve failure in this case was no less sudden for the fact that causative circumstances stretched out over a period of time. The majority does not take issue with the fact that a sudden loss occurred in this case.[1] It is well established that coverage for an accident is determined without reference to causation. *Community Fed. S. & L. v. Hartford S. Boiler Insp. & Ins. Co.*, 580 F.Supp. 1170, 1173 (E.D.Mo.1984); *Cyclops Corp. v. Home Ins. Co.*, 352 F.Supp. 931, 936 (W.D.Penn.1973). Significantly, the Minnesota Supreme Court has held that a drown-

---

1. Actually, the trial court employed a mixed rationale in its decision against appellant's claim. Before trial, the court stated its "due to" analysis. Later, when the court directed a verdict, the court repeated that the valve failure was caused by wear and tear, but the court concentrated on its analysis that there was no accident because there had been a "gradual" and not a "sudden" breakdown of the valve. As stated in the dissenting opinion, this analysis of suddenness is erroneous. Clearly, the court was preoccupied with its concern for the ultimate cause of appellant's accident. That concern was inappropriate in terms of the suddenness concept, and equally inappropriate in the sense of enlarging the wear and tear provision of the policy beyond its stated scope.

ing is accidental in spite of the fact that the drowning was triggered by a disease of the decedent which was the subject of a life insurance policy exclusion. *Orman v. Prudential Ins. Co. of America*, 296 N.W.2d 380 (Minn.1980).

Other courts give a similar construction to wear and tear exceptions contained in a provision defining accidents. *Lakeshore Marine, Inc. v. Hartford Acc. & Indem. Co.*, 164 Ga.App. 417, 296 S.E.2d 418 (1982) (accident notwithstanding history of corrosion); *Riefflin v. Hartford Steam Boiler Insp. & Ins. Co.*, 164 Mont. 287, 521 P.2d 675 (1974) (contracting cleaning and replacement, not covered, with undisputed liability for boiler failures resulting from earlier corrosion).

b. It is evident that Western knows how to employ appropriate language when it chooses to introduce the concept of causation into its policy. The policy in this case excludes numerous hazards, including, for example, military hazards and nuclear hazards. In these instances, the policy provides an exclusion for accidents "caused by" those circumstances. In my opinion, it is critically important that this language was not employed in describing the wear and tear exceptions to the definition of accident.

c. Finally, the insurer has employed language in its policy which is at best ambiguous. The ambiguity in this case is one which is notorious, the subject of litigation in many courts over many years. Our courts are firmly committed to the notion that ambiguities in an insurance contract must be construed against the insurer. *American Nat'l. Fire Ins. v. Fournelle Est.*, 472 N.W.2d 292, 294 (Minn.1991).

I respectfully dissent.