690 So.2d 331 (1996)
ALABAMA PLATING COMPANY and J. M. Rowe, Jr.
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, et al.
1941753.
Supreme Court of Alabama.
December 20, 1996.
Rehearing Overruled February 21, 1997.
*332 Hewitt L. Conwill of Conwill & Justice, P.C., Columbiana, Thomas H. Brown of Harris & Brown, P.C., Birmingham, and Eugene R. Anderson, John W. Fried and Joan L. Lewis of Anderson, Kill, Olick & Oshinsky, P.C. (that firm name was changed during these proceedings, to Anderson, Kill & Olick, P.C.), New York City, for Appellants.
Clarence M. Small, Jr., Deborah Alley Smith and Susan S. Hayes of Rives & Peterson, P.C., Birmingham, for Hilb, Rogal and Hamilton Company of Birmingham, Inc.
James B. Rossler and W. Perry Hall of Stout & Rossler, Mobile, for Safety National Casualty Corporation.
Keri Donald Simms (C. Peter Bolvig later substituted), of McDaniel, Hall, Conerly & Lusk, P.C., Birmingham, for Ranger Insurance Company.
Walter J. Andrews, Frank Winston, Jr., Dale E. Hausman and John C. Yang of Wiley, Rein & Fielding, Washington, DC, Thomas A. Woodall of Woodall & Maddox, Birmingham, C. William Gladden of Gladden & Sinor, Birmingham (on second rehearing application), and Sterling G. Culpepper, Jr., David R. Boyd and Robin G. Laurie of Balch & Bingham, Montgomery, for United States Fidelity and Guaranty Company.
Edward Zampino, Peter E. Mueller and Victor C. Harwood III of Harwood Lloyd, Hackensack, NJ, and George M. Van Tassel, Jr. of Sadler, Sullivan, Sharp, Fishburne & Van Tassel, Birmingham, for Amicus Curiae Aetna Casualty and Surety Company, in support of United States Fidelity and Guaranty Company.
Forrest S. Latta of Pierce, Carr, Alford, Ledyard & Latta, P.C., Mobile, for Amicus Curiae Insurance Environmental Litigation Ass'n, on behalf of certain member companies of IELA.

On Application For Rehearing
PER CURIAM.
The opinion of August 30, 1996, is withdrawn and the following opinion is substituted therefor.
The plaintiffs, Alabama Plating Company and J.M. Rowe, Jr., its president (collectively *333 "Alabama Plating"), appeal from summary judgments in favor of the defendant insurers, United States Fidelity and Guaranty Company ("USF & G"), Safety National Casualty Corporation ("Safety"), Ranger Insurance Company ("Ranger"), and in favor of Hilb, Rogal and Hamilton Company of Birmingham, Inc. ("HRH"). Although Alabama Plating's amended complaint alleged more than 30 counts against the defendants, the major issue involved in this appeal is simply whether Alabama Plating is covered under the defendants' insurance policies for certain sums it has expended and will be forced to expend for environmental remediation ordered by the Alabama Department of Environmental Management ("ADEM").
Alabama Plating has operated a metal finishing business in Vincent, Alabama, from the 1950's to the present. Until 1986, Alabama Plating's business included an electroplating operation. The electroplating process created a liquid byproduct containing cadmium, chromium, cyanide, and zinc; its current operations create no such byproducts. In accordance with instructions from the relevant environmental protection authoritythe United States Army Corps of Engineers, the Alabama Water Improvement Commission, and then ADEMAlabama Plating directed its wastewater through a mechanical treatment system, into containment ponds where the metals would settle out, and then directed the treated wastewater to a small stream for which ADEM had issued it a discharge permit. Although Alabama Plating followed the directives of the authorities, environmental contamination occurred. Since 1986, ADEM has issued several administrative orders requiring environmental remediation by Alabama Plating. A 1986 order related to the cleanup of sediment from a section of the stream bed where metals had accumulated as a result of an incident where the water treatment system failed to function properly. ADEM orders in 1990 and 1991 related to delays in Alabama Plating's efforts to complete cleanup of contaminated groundwater and to close the containment ponds.
In June 1991, Alabama Plating made a demand for insurance coverage for its costs of complying with the ADEM orders, under its comprehensive general liability ("CGL") policies with USF & G and under its excess liability policies with Safety and Ranger. All the insurers denied coverage. Alabama Plating sued the insurers on theories of breach of contract, bad faith, fraudulent misrepresentation, and other theories related to the alleged wrongful denial of coverage. Alabama Plating also sued HRH, the insurance agency through which it had obtained its insurance coverage, alleging negligence and fraudulent misrepresentation.

I. The USF & G CGL Policy and Breach of Contract
Because the existence of a contractual duty on the part of USF & G to provide insurance coverage is the foundation of Alabama Plating's claims, we address that question first. The broad insuring clause of the standard-form CGL policy states:
"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
". . . .
"COVERAGE B-PROPERTY DAMAGE
"to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such ... property damage, even if any of the allegations of the suit are groundless, false or fraudulent."
(Emphasis added.) The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Accordingly, the focus of the definition of "occurrence" is whether the insured, in this case Alabama Plating, expected or intended that its manufacturing operations would cause the property damage alleged in the ADEM orders, the soil and groundwater contamination. Under Alabama law, this inquiry is a subjective test, Haisten v. Audubon Indem. Co, 642 So.2d 404 (Ala.1994), and Alabama Plating has presented substantial evidence that it did not *334 expect or intend that its manufacturing process would cause the property damage at issue.[1]

A. The "Pollution Exclusion" and its "Sudden and Accidental" Exception
One of the bases for USF & G's denial of insurance coverage to Alabama Plating is the so-called "pollution exclusion" clause that the insurance industry uniformly added to CGL policies beginning in the early 1970's. USF & G argues that the clause eliminates insurance coverage for Alabama Plating as a matter of law. The qualified exclusion clause states:
"THIS POLICY SHALL NOT APPLY:
". . . .
"(f) to ... property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."
(Emphasis added.)
Although this Court has previously considered appeals involving the above-quoted exclusion, we have not addressed the meaning of the "sudden and accidental" exception to the exclusion, which reinvokes coverage that the prior language of the clause excludes. USF & G argues that the "sudden and accidental" exception provides coverage only where the pollution contamination was caused by an abrupt, short-lived event. Alabama Plating argues that the phrase "sudden and accidental" in the exception is ambiguous in meaning, and it makes several arguments supporting the proposition that "sudden and accidental" should be interpreted in favor of the policyholder to mean "unexpected and unintended."
First, we note that Hicks v. American Resources Ins. Co., 544 So.2d 952 (Ala.1989), cited by USF & G, is of no assistance. The meaning of the "sudden and accidental" exception to the pollution exclusion was not raised in that appeal. We also find no guidance from Koch v. State Farm Fire & Cas. Co., 565 So.2d 226, 231 (Ala.1990), where we interpreted the phrase "sudden and accidental" appearing in an exception to an exclusion in a homeowner's policy to mean "immediate and accidental." Our interpretation was driven by the fact that the homeowner's policy at issue was written with an overall structure intended to exclude coverage for gradually occurring damage. In contrast, the overall structure of a CGL policy provides coverage for gradual, repeated conditions. Thus, a CGL policy provides a context in which to interpret the phrase "sudden and accidental" that is very different from the context in which the homeowner's policy in Koch was interpreted.
A narrow majority of state supreme courts that have considered the meaning of the "pollution exclusion," including the Supreme Courts of Indiana and Oregon this year, have held that the "sudden and accidental" exception is ambiguous and must be construed in favor of the policyholder to provide coverage where migration of contaminants into the soil or groundwater was "unexpected and unintended."[2] We agree and, *335 thus, adopt the majority position, which we consider to be the better reasoned approach.
At a minimum, the word "sudden" is ambiguous. It may refer to an event that is unexpected, or to one that happens quickly or abruptly. Dictionaries, particularly those published around 1970, when the "pollution exclusion" clause was first added to CGL policies, reveal two differing definitions for "sudden," with the primary meaning being "unexpected."[3] Given this ambiguity in the "pollution exclusion," we look to extrinsic evidence of the drafter's intent.
Before the addition of the so-called "pollution exclusion" to "occurrence"-based CGL policies in the early 1970's, it was clear that the policies provided coverage for gradually occurring environmental contamination.[4] The evidence of the intent of the drafter of the "pollution exclusion" clause, an insurance industry group that represented USF & G and many other insurers, reveals that when the clause was added to the "occurrence"-based CGL policies, it was added with an expressed intent that there would be no reduction in coverage, but that the addition of the exclusion was merely a "clarification" that the policies did not provide coverage for intentional polluters. This evidence includes both contemporaneous statements by insurance industry representatives[5] and standard form letters sent to state insurance departments, including the Alabama Department of Insurance, in 1970 asking for approval of the pollution exclusion as an addition to CGL policies.[6]
*336 Moreover, when insurers sought to add the "pollution exclusion" to their CGL policies, the phrase "sudden and accidental" had already undergone judicial construction as language in boiler and machinery insurance policies where the occurrence of damage had to be "sudden and accidental" for coverage to be invoked. Courts had uniformly interpreted the phrase to mean that the damage had to be unexpected and unintended for the insurance to apply, so that the phrase provided coverage for gradual events.[7]
In the face of this established interpretation, insurance companies chose to use the phrase "sudden and accidental" in the exception to the pollution exclusion.[8] Because the "judicial construction placed upon particular words or phrases made prior to the issuance of a policy employing them will be presumed to have been the construction intended to be adopted by the parties," Couch on Insurance 2d § 15:20 (1984), we hold that the "sudden and accidental" exception to the pollution exclusion clause provides coverage when the "discharge, dispersal, release or escape" of contaminants into the environment was unexpected and unintended.[9]

B. USF & G's Other Policy Defenses
USF & G also argues that it does not have to provide insurance coverage to Alabama Plating under its CGL policies, based on the following reasons: (1) the costs of performing the environmental remediation ordered by ADEM are not "damages" under a CGL policy, and (2) the CGL policy's "owned property" exclusion precludes coverage for cleanup of water or soil within the boundaries of an insured's property.
This Court has not previously addressed these specific issues, and the relevant terms are not defined in the CGL policies at issue. However, as noted previously, the policies in question are standard-form policies, issued nationwide, so the rulings of courts in other states are of some guidance. We find that as to each issue above, the clear majority of courts that have answered the questions have ruled against the arguments made by USF & G. Thus, we adopt the majority position on each issue: environmental remediation costs are damages covered by CGL policies,[10] and the "owned property" *337 exclusion does not exclude coverage for the costs of remediating groundwater contamination.[11] These rulings are consistent with prior decisions of this Court. We have previously refused to narrowly limit the type of costs covered as damages under a liability policy. National Union Fire Ins. Co. v. City of Leeds, 530 So.2d 205 (Ala.1988). We have also held that a landowner's interest in the groundwater beneath his property is a limited right, see Martin v. City of Linden, 667 So.2d 732 (Ala.1995), not one of ownership.

C. Notice of a Claim For Coverage
As a last defense, USF & G claims that, as a matter of law, Alabama Plating failed to give timely notice of the "occurrences" relating to the 1986, 1990, and 1991 ADEM *338 administrative orders. USF & G's CGL policies require that notice be given of an occurrence "as soon as practicable" and that notice of a claim or lawsuit be given immediately. Alabama Plating contends that in 1985 it notified HRH of possible environmental liability; it says HRH was an agent of USF & G for receiving notice of a claim, but that HRH failed to pass the notice on to USF & G. Alabama Plating also argues that its June 1991 written notice to USF & G was reasonable notice under the circumstances.
This court has held that notice requirements in insurance policies such as "as soon as practicable" mean that the insured must give notice to the insurer within a reasonable time under the circumstances of the case. CIE Service Corp. v. Smith, 460 So.2d 1244 (Ala.1984). To determine whether any delay in giving the notice was reasonable, a court must consider the length of the delay and any reasons for the delay. CIE Service Corp., supra. Moreover, mitigating evidence offered by the insured can create a question of fact as to whether the notice was reasonable. Watson v. Alabama Farm Bureau Mut. Cas. Ins. Co., 465 So.2d 394 (Ala. 1985).
Alabama Plating presented substantial evidence indicating that HRH was the agent of its insurers for the receipt of notice relating to the potential for environmental liability. Alabama Plating says that when it first gave notice to HRH in 1985, HRH informed it that it had no insurance coverage for such liability and then failed to give notice of potential liability to its insurers. This alleged action is the basis of Alabama Plating's claims against HRH, discussed in section II, below. Alabama Plating contends that HRH's misrepresentation led it to believe that an attempt on its own part to notify its insurers would be futile. We conclude that there are questions of fact for a jury to resolve before it can be determined whether Alabama Plating's notice to its insurers in June 1991 of the 1991, 1990, and 1986 ADEM orders was reasonable under the circumstances. A finding that notice to USF & G was late as to one of those orders would not preclude a finding that it was timely as to other orders. In sum, Alabama Plating's notice to USF & G was not untimely as a matter of law.

D. Summary
We conclude that Alabama Plating has presented substantial evidence that USF & G owed a duty under its CGL policies to provide insurance coverage to Alabama Plating in relation to the ADEM orders. Thus, the trial court erred in entering the summary judgment for USF & G on Alabama Plating's breach of contract claims.

II. Claims Against HRH
Alabama Plating argues that HRH, an agent of USF & G and other insurers through whom it had purchased insurance coverage since the 1950's, was negligent in failing to provide notice to USF & G and Alabama Plating's other insurers after Alabama Plating informed HRH in February and October 1985 of potential environmental liability. Alabama Plating argues that HRH was its "risk manager," that HRH breached a duty HRH owed to Alabama Plating by failing to give notice to Alabama Plating's insurers, and that Alabama Plating has suffered damage as a proximate result.
Alabama Plating also argues that HRH fraudulently misrepresented to it that Alabama Plating had no insurance coverage for environmental liability; that Alabama Plating relied to its detriment on the representation; and that it has suffered damage as a proximate result. Alabama Plating says that it failed to give notice directly to its insurers, until 1991, because it had believed HRH's representation. Alabama Plating contends that if, because of an untimely notification of a potential claim, it is unable to obtain insurance coverage from its insurers, then it should be able to recover damages from HRH.
We believe that Alabama Plating presented substantial evidence in support of these claims. Moreover, we find that material issues of fact remain, such as the nature of the relationship between Alabama Plating and HRH and the relationship between HRH and Alabama Plating's insurers. Accordingly, *339 the trial court erred in entering the summary judgment for HRH on these claims.

III. Safety and Ranger: The Excess Insurers
Both Safety and Ranger sold Alabama Plating commercial umbrella (excess) liability insurance policies. Ranger sold Alabama Plating one policy covering December 1978 to December 1979; Safety sold Alabama Plating three policies covering February 1983 to February 1986. Coverage under such policies is invoked when the limits of liability have been reached in the underlying primary insurance, which, in this case, is USF & G's CGL policies.
Alabama Plating asserted both breach of contract and bad faith claims against Safety and Ranger. In response, Safety and Ranger assert many of the same reasons used by USF & G as defenses for not providing insurance coverage to Alabama Plating. For the reasons discussed above, we find no merit to those defenses. However, we note that questions of fact remain as to whether any of the occurrences upon which Alabama Plating's claims are based occurred during the periods covered by Safety and Ranger's policies. In any event, the trial court erred in entering the summary judgments on the breach of contract claims against Safety and Ranger.

IV. Conclusion
The trial court entered summary judgments for the defendants on all of Alabama Plating's claims. We reverse the summary judgments as they relate to the claims specifically discussed above. With regard to the claims not discussed above, such as bad faith failure to provide insurance coverage, failure to warn, breach of warranty, tortious interference with contract, estoppel, and breach of fiduciary duty, we conclude that the trial court properly entered the summary judgments, and as to those claims the summary judgments are affirmed.
APPLICATION GRANTED; OPINION OF AUGUST 30, 1996, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and ALMON, SHORES, HOUSTON, INGRAM, COOK, and BUTTS, JJ., concur.
MADDOX, J., concurs in part and dissents in part.
MADDOX, Justice (concurring in part and dissenting in part).
I think the intent of the pollution exclusion clause was expressed in Molton, Allen & Williams, Inc. v. St. Paul Fire & Marine Ins. Co., 347 So.2d 95 (Ala.1977). I believe "sudden and accidental" means "immediate and accidental," not "unexpected and unintended." Therefore, I respectfully dissent from the holding that the pollution exclusion clause does not apply in regard to Alabama Plating's breach of contract claim.
To the extent that the majority reverses the summary judgments, I dissent; to the extent that it affirms the summary judgments, I concur.

On Second Application For Rehearing
PER CURIAM.
APPLICATION OVERRULED.
HOOPER, C.J., and ALMON, SHORES, COOK, and BUTTS, JJ., concur.
HOUSTON, J., concurs specially.
MADDOX, J., dissents.
HOUSTON, Justice (concurring specially).
If it were not for the estoppel issue in this case, I would join Justice Maddox's dissent.
When I concurred with the opinion released in this case on August 30, 1996, I was convinced that Alabama Plating had failed to offer evidence to support its contentions underlying its estoppel theory. Before the release of the opinion on application for rehearing (December 20, 1996), I was persuaded that sufficient evidence had been presented as to the meaning of this pollution exclusion to make estoppel an issue that should not have been resolved by the summary judgment entered by the trial court. Therefore, on December 20, 1996, I should have concurred *340 in the result on the application for rehearing.
MADDOX, Justice (dissenting).
On original deliverance, this Court, in a 7-1 decision released on August 30, 1996, affirmed summary judgments in favor of the insurers and held that the words "sudden and accidental" in a pollution exclusion clause were not ambiguous and excluded coverage for gradual pollution by the insured. On December 20, 1996, this Court withdrew its previous opinion and issued an opinion in which the Court held that the word "sudden" was ambiguous and reversed the trial court's summary judgments in favor of the insurers. I filed a short dissent when that second opinion was released, but since then I have done substantial additional research on the issue, and I am now more convinced than ever that the first opinion issued by this Court was correct and that the logic and reasoning in the second opinion are seriously flawed.
Although a counting of jurisdictions is not helpful, I believe that, contrary to what the majority finds, a majority of courts that have looked at the issue have held that a pollution exclusion clause that excludes from its preclusive effect occurrences that are "sudden and accidental" does not exclude from its preclusive effect occurrences that are "gradual." One of the leading cases is from our neighboring State of Florida. See Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Ins. Corp., 636 So.2d 700 (Fla.1993), where the Supreme Court of Florida said that "to construe sudden also to mean unintended and unexpected would render the words sudden and accidental entirely redundant." See, also, Ray Indus., Inc. v. Liberty Mut. Ins. Co., 974 F.2d 754, 768-69 (6th Cir.1992); Ogden Corp. v. Travelers Indem. Co., 924 F.2d 39 (2d Cir.1991) (New York law); Grant-Southern Iron & Metal Co. v. CNA Ins. Co., 905 F.2d 954 (6th Cir.1990) (Michigan law); FL Aerospace v. Aetna Casualty & Sur. Co., 897 F.2d 214 (6th Cir.), cert. denied, 498 U.S. 911, 111 S.Ct. 284, 112 L.Ed.2d 238 (1990); Great Lakes Container Corp. v. National Union Fire Ins. Co., 727 F.2d 30 (1st Cir. 1984); Alcolac v. St. Paul Fire & Marine Ins. Co., 716 F.Supp. 1541 (D.Md.1989); Fireman's Fund Ins. Cos. v. Ex-Cell-O Corp., 702 F.Supp. 1317 (E.D.Mich.1988); EAD Metallurgical, Inc. v. Aetna Casualty & Sur. Co., 701 F.Supp. 399 (W.D.N.Y.1988), aff'd, 905 F.2d 8 (2d Cir.1990); Peerless Ins. Co. v. Strother, 765 F.Supp. 866, 871 n. 4 (E.D.N.C.1990); Hayes v. Maryland Casualty Co., 688 F.Supp. 1513 (N.D.Fla.1988); Centennial Ins. Co. v. Lumbermens Mut. Casualty Co., 677 F.Supp. 342 (E.D.Pa.1987); American Motorists Ins. Co. v. General Host Corp., 667 F.Supp. 1423 (D.Kan.1987), aff'd, 946 F.2d 1482 (10th Cir.), amended, vacated in part on rehearing en banc, 946 F.2d 1489 (10th Cir.1991); American Mut. Liab. Ins. Co. v. Neville Chem. Co., 650 F.Supp. 929 (W.D.Pa.1987); Fischer & Porter Co. v. Liberty Mut. Ins. Co., 656 F.Supp. 132 (E.D.Pa. 1986); Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co., 503 N.W.2d 793 (Minn.App. 1993); Hybud Equip. Corp. v. Sphere Drake Ins. Co., 64 Ohio St.3d 657, 597 N.E.2d 1096 (1992), cert. denied, 507 U.S. 987, 113 S.Ct. 1585, 123 L.Ed.2d 152 (1993); Upjohn Co. v. New Hampshire Ins. Co., 438 Mich. 197, 476 N.W.2d 392 (1991).
In Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Ins. Corp, the Florida Supreme Court stated:
"The use of the word `sudden' can connote a sense of the unexpected. However, rather than standing alone in the pollution exclusion clause, it is an integral part of the conjunctive phrase `sudden and accidental.' The term accidental is generally understood to mean unexpected or unintended. Hartford Accident & Indemnity Co. v. United States Fidelity & Guar. Co. 962 F.2d 1484 (10th Cir.), cert. denied, 506 U.S. 955, 113 S.Ct. 411, 121 L.Ed.2d 335 (1992). Therefore, to construe sudden also to mean unintended and unexpected would render the words sudden and accidental entirely redundant. [Footnote omitted.] This analysis is well stated in Northern Ins. Co. v. Aardvark Assocs., Inc. [942 F.2d 189, 192 (3d Cir.1991) (quoting Lower Paxton Township v. United States Fidelity & Guar. Co., 383 Pa.Super. 558, 557 A.2d 393, 402 (1989))]:

*341 "`To read "sudden and accidental" to mean only unexpected and unintended is to rewrite the policy by excluding one important pollution coverage requirementabruptness of the pollution discharge. The very use of the words" sudden and accidental" [emphasis added in Northern Ins. Co.] reveal[s] a clear intent to define the words differently, stating two separate requirements. Reading "sudden" in its context, i.e., joined by the word "and" to the word "accident[al]", the inescapable conclusion is that "sudden", even if including the concept of unexpectedness, also adds an additional element because "unexpectedness" is already expressed by "accident[al]." This additional element is the temporal meaning of sudden, i.e., abruptness or brevity. To define sudden as meaning only unexpected or unintended, and therefore as a mere restatement of accidental, would render the suddenness requirement mere surplusage.'"
636 So.2d at 704.
Because Alabama Plating's pollution was gradual, it was not "sudden and accidental." Consequently, coverage was precluded under the terms of the pollution exclusion clause, and the summary judgments in favor of the insurers should be affirmed. I respectfully dissent.
NOTES
[1] Under the rule of United States Fid. & Guar. Co. v. Warwick Dev. Co., 446 So.2d 1021 (Ala. 1984), the time of the "occurrences" under the liability insurance policies at issue is the time the property was actually injured, i.e., the time the soil and groundwater actually suffered contamination. There remain questions of fact as to the exact time of those "occurrences" and what policy years are implicated. Given the likelihood of multiple "occurrences," coverage may be at issue under many more than one of the USF & G CGL policies.
[2] Hecla Mining Co. v. New Hampshire Ins. Co., 811 P.2d 1083 (Colo.1991); Claussen v. Aetna Cas. & Sur. Co., 259 Ga. 333, 380 S.E.2d 686 (1989); Outboard Marine Corp. v. Liberty Mut. Ins. Co., 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992); American States Ins. Co. v. Kiger, 662 N.E.2d 945 (Ind.1996); St. Paul Fire & Marine Ins. Co. v. McCormick & Baxter Creosoting Co., 324 Or. 184, 923 P.2d 1200 (1996); Greenville County v. Insurance Reserve Fund, 313 S.C. 546, 443 S.E.2d 552 (1994); Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha, 126 Wash.2d 50, 882 P.2d 703 (1994); Just v. Land Reclamation, Ltd., 155 Wis.2d 737, 456 N.W.2d 570 (1990). See Morton Int'l, Inc. v. General Acc. Ins. Co. of America, 134 N.J. 1, 629 A.2d 831 (1993); Joy Technologies, Inc. v. Liberty Mut. Ins. Co., 187 W.Va. 742, 421 S.E.2d 493 (1992).
[3] Webster's Third New International Dictionary (1971) defines "sudden" as "1a: happening without previous notice or with very brief notice: coming or occurring unexpectedly: not foreseen or prepared for ... b: changing character or angle all at once ... c: come upon or met unexpectedly ... 2a: characterized by or manifesting hastiness ... b: characterized by swift action: a: made, provided, brought about, or acting in a short time ... b: executed or executing on the spur of the moment." Black's Law Dictionary (Revised 4th ed.1968) defines "sudden" as "[h]appening without previous notice or brief notice; coming or occurring unexpectedly; unforeseen; unprepared for."
[4] For example, in early 1966, Gilbert Bean, assistant secretary of Liberty Mutual Insurance Company, explained in an insurance industry technical paper that the CGL policies provided:

"`coverage for gradual BI [bodily injury] or gradual PD [property damage] resulting over a period of time from exposure to the insured's waste disposal. Examples would be gradual adverse effect of smoke, fumes, air or stream pollution, contamination of water supply or vegetation.'"
Carl A. Salisbury, Pollution Liability Insurance Coverage, the Standard-Form Pollution Exclusion, and the Insurance Industry: A Case Study in Collective Amnesia, 21 Envtl. L. 357, 366 (1991).
[5] For example, The Travelers Indemnity Company submitted to the West Virginia Department of Insurance a pollution exclusion with wording slightly different from that of the standard-form exclusion. Its exclusion would exclude coverage for pollution "expected or intended by the insured" rather than pollution that was not "sudden and accidental." Richard Reeves of The Travelers' Government Affairs Division wrote to the insurance commissioner, stating that The Travelers believed the results of the two exclusions were the same, but that the wording The Travelers had adopted was clearer in meaning than the standard-form clause. Salisbury, n. 4, at 373.

A contemporary issue of The Fire, Casualty & Surety Bulletin, published by the insurance industry to assist insurance agents and brokers in interpreting standard policy provisions, stated:
"`In one important respect, the [pollution] exclusion simply reinforces the definition of occurrence. That is, the policy states that it will not cover claims where the "damage was expected or intended" by the insured and the exclusion states, in effect that the policy will cover incidents which are sudden and accidentalunexpected and not intended.'"
Just v. Land Reclamation, Ltd., 155 Wis.2d 737, 752, 456 N.W.2d 570, 575 (1990).
[6] The Supreme Court of Georgia has recognized that the insurance industry's original position was that the pollution exclusion clause was not intended to reduce coverage:

"[T]he interpretation of the policy advanced by Claussen is not contrary to the interpretation Aetna gave the clause when it was adopted. Documents presented by the Insurance Rating Board (which represents the industry and on which Aetna participated) to the Insurance Commissioner when the `pollution exclusion' was first adopted suggest that the clause was intended to exclude only intentional polluters. The Insurance Rating Board represented [that] `the impact of the [pollution exclusion clause] on the vast majority of risks would be no change.'"
Claussen v. Aetna Cas. & Sur. Co., 259 Ga. 333, 337, 380 S.E.2d 686, 689 (1989).
[7] Julius Hyman & Co. v. American Motorists Ins. Co., 136 F.Supp. 830 (D.Colo.1955) (holding that a leak in a boiler pipe that occurred because a gradual weakening in the pipe over time caused the pipe to split was the result of a "sudden and accidental" cracking of the pipe); New England Gas & Elec. Ass'n v. Ocean Acc. & Guar. Co., 330 Mass. 640, 116 N.E.2d 671 (1953) (holding that a crack in a turbine spindle was "sudden and accidental," "sudden" meaning unexpected and unforeseen); City of Detroit Lakes v. Travelers Indem. Co., 201 Minn. 26, 275 N.W. 371 (1937) (holding that a rupture in a power plant steam engine that occurred because of a gradually ensuing deterioration was "sudden and accidental"); Anderson & Middleton Lumber Co. v. Lumbermen's Mut. Cas. Co., 53 Wash.2d 404, 333 P.2d 938 (1959) (holding that a gradual cracking of a bandsaw wheel was "sudden and accidental"). See Couch on Insurance 2d § 42:396 (1984) ("When coverage is limited to a sudden `breaking' of machinery the word `sudden' should be given its primary meaning as happening without previous notice, or as something coming or occurring unexpectedly, as unforeseen or unprepared for").
[8] "Richard Schmalz, ... a key member of the drafting committee that formulated the pollution exclusion, testified in a deposition that the drafters of the exclusion used `language that at least some people in the insurance business had seen before.' Moreover, they actually looked to the `sudden and accidental' language in boiler and machinery policies for the `analogous concept.'" Salisbury, at 382.
[9] It is the migration of pollutants or contaminants from Alabama Plating's effluent containment ponds to the soil and groundwater below that is the relevant "discharge, dispersal, release, or escape," not Alabama Plating's placement of wastes into the containment ponds. The terms "discharge," "dispersal," "release," and "escape" are not defined in the policies, but their dictionary definitions and popular meanings "have in common the notion of an escape or release from confinement, or the dispersal from a fixed place. They apply well to the migration of wastes from the pits into the groundwater. They do not apply well to disposal into the pits." Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha, 126 Wash.2d 50, 78, 882 P.2d 703, 719 (1994).
[10] Because so few state supreme courts have addressed this specific issue, we also look to federal court decisions which have interpreted state law. MAPCO Alaska Petroleum, Inc. v. Central Nat'l Ins. Co. of Omaha, 795 F.Supp. 941 (D.Alaska 1991) (applying Alaska law); AIU Ins. Co. v. Superior Ct. of Santa Clara, 51 Cal.3d 807, 799 P.2d 1253, 274 Cal.Rptr. 820 (1990); Metro Wastewater Reclamation Dist. v. Continental Cas. Co., 834 F.Supp. 1254 (D.Colo.1993) (applying Colorado law); New Castle County v. Hartford Acc. & Indem. Co., 933 F.2d 1162 (3d Cir. 1991) (applying Delaware law); United States v. Pepper's Steel & Alloys, Inc., 823 F.Supp. 1574 (S.D.Fla.1993), aff'd in part, rev'd in part, 87 F.3d 1329 (11th Cir.1996) (applying Florida law); Atlantic Wood Indus., Inc. v. Lumbermen's Underwriting Alliance, 196 Ga.App. 503, 396 S.E.2d 541 (1990), cert. denied, 498 U.S. 1085, 111 S.Ct. 958, 112 L.Ed.2d 1046 (1991); Aetna Cas. & Sur. Co. v. Pintlar Corp., 948 F.2d 1507 (9th Cir. 1991) (applying Idaho law); Outboard Marine Corp. v. Liberty Mut. Ins. Co., 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992); Daniels v. Cincinnati Ins. Co., 800 F.Supp. 753 (S.D.Ind.1992), reconsideration granted and vacated in part on other grounds, 148 F.R.D. 257 (S.D.Ind.1993) (applying Indiana law); A.Y. McDonald Indus., Inc. v. Insurance Co. of N. America, 475 N.W.2d 607 (Iowa 1991); Bausch & Lomb, Inc. v. Utica Mut. Ins. Co., 330 Md. 758, 625 A.2d 1021 (1993); Hazen Paper Co. v. United States Fid. & Guar. Co., 407 Mass. 689, 555 N.E.2d 576 (1990); United States Aviex Co. v. Travelers Ins. Co., 125 Mich.App. 579, 336 N.W.2d 838 (1983); Minnesota Mining & Mfg. Co. v. Travelers Indem. Co., 457 N.W.2d 175 (Minn.1990); Independent Petrochem. Corp. v. Aetna Cas. & Sur. Co., 944 F.2d 940 (D.C.Cir.1991) (applying Missouri law), cert. denied, 503 U.S. 1011, 112 S.Ct. 1777, 118 L.Ed.2d 435 (1992); Coakley v. Maine Bonding & Cas. Co., 136 N.H. 402, 618 A.2d 777 (1992); Morton Int'l, Inc. v. General Acc. Ins. Co. of America, 134 N.J. 1, 629 A.2d 831 (1993), cert. denied, 512 U.S. 1245, 114 S.Ct. 2764, 129 L.Ed.2d 878, reh'g denied, 512 U.S. 1277, 115 S.Ct. 25, 129 L.Ed.2d 923 (1994); Avondale Indus., Inc. v. Travelers Indem. Co., 887 F.2d 1200 (2d Cir.1989), cert. denied, 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990) (applying New York law); Don Clark, Inc. v. United States Fid. & Guar. Co., 145 Misc.2d 218, 545 N.Y.S.2d 968 (Sup.Ct.1989); C.D. Spangler Constr. Co. v. Industrial Crankshaft & Eng'g Co., 326 N.C. 133, 388 S.E.2d 557 (1990); Anderson Dev. Co. v. Travelers Indemnity Co., 49 F.3d 1128 (6th Cir. 1995) (applying Ohio law); National Indem. Co. v. United States Pollution Control, Inc., 717 F.Supp. 765 (W.D.Okla.1989) (applying Oklahoma law); St. Paul Fire & Marine Ins. Co. v. McCormick & Baxter Creosoting Co., 126 Or.App. 689, 870 P.2d 260 (1994); Gerrish Corp. v. Universal Underwriters Ins. Co., 754 F.Supp. 358 (D.Vt.1990), aff'd, 947 F.2d 1023 (2d Cir.1991), cert. denied, 504 U.S. 973, 112 S.Ct. 2939, 119 L.Ed.2d 564 (1992) (applying Vermont law); Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wash.2d 869, 784 P.2d 507 (1990); Maryland Cas. Co. v. Wausau Chem. Corp., 809 F.Supp. 680 (W.D.Wis. 1992) (applying Wisconsin law).
[11] Because so few state supreme courts have addressed this specific issue, we also look to federal court decisions that have interpreted state law. MAPCO Alaska Petroleum, Inc. v. Central Nat'l Ins. Co. of Omaha, 795 F.Supp. 941 (D.Alaska 1991) (applying Alaska law); Intel Corp. v. Hartford Acc. & Indem. Co, 952 F.2d 1551 (9th Cir.1991) (applying California law); New Castle County v. Continental Cas. Co., 725 F.Supp. 800 (D.Del.1989) (applying Delaware law), aff'd in part, rev'd in part, and remanded sub nom. New Castle County v. Hartford Acc. & Indem. Ins. Co., 933 F.2d 1162 (3d Cir.1991); Claussen v. Aetna Cas. & Sur. Co., 754 F.Supp. 1576 (S.D.Ga.1990) (applying Florida law); South Carolina Ins. Co. v. Coody, 813 F.Supp. 1570 (M.D.Ga.1993) (applying Georgia law); La Salle Nat'l Trust, N.A. v. Schaffner, 818 F.Supp. 1161 (N.D.Ill.1993) (applying Illinois law); Upjohn Co. v. New Hampshire Ins. Co., 178 Mich. App. 706, 444 N.W.2d 813 (1989), rev'd on other grounds, 438 Mich. 197, 476 N.W.2d 392 (1991); Northern States Power Co. v. Fid. & Cas. Co., 504 N.W.2d 240 (Minn.Ct.App.1993), aff'd, 523 N.W.2d 657 (Minn.1994); United States v. Conservation Chem. Co., 653 F.Supp. 152 (W.D.Mo. 1986) (applying Missouri law); New Hampshire Ball Bearings Co. v. Aetna Cas. Co., 848 F.Supp. 1082 (D.N.H.1994), rev'd on other grounds, 43 F.3d 749 (1st Cir.1995); Don Clark, Inc. v. United States Fid. & Guar. Co., 145 Misc.2d 218, 545 N.Y.S.2d 968 (N.Y.Sup.1989); North Pac. Ins. Co. v. United Chrome Prods., Inc., 122 Or.App. 77, 857 P.2d 158, rev. denied, 318 Or. 171, 867 P.2d 1385 (1993); Chemetron Investments, Inc. v. Fidelity & Cas. Co. of New York, 886 F.Supp. 1194 (W.D.Pa.1994) (applying Pennsylvania law); Gerrish Corp. v. Universal Underwriters Ins. Co., 754 F.Supp. 358 (D.Vt.1990) (applying Vermont law), aff'd, 947 F.2d 1023 (2d Cir.1991), cert. denied, 504 U.S. 973, 112 S.Ct. 2939, 119 L.Ed.2d 564 (1992); Patz v. St. Paul Fire & Marine Ins. Co., 817 F.Supp. 781 (E.D.Wis.1993), aff'd, 15 F.3d 699 (7th Cir.1994) (applying Wisconsin law).