**William S. HAYNES, etc., et al., Plaintiffs,**

v.

**GASOLINE MARKETERS, INC. et al., Defendants.**

**No. CIV. A. 98–A–1374–N.**

United States District Court, M.D. Alabama, Northern Division.

Nov. 2, 1999.

Denying Reconsideration, Feb. 10, 2000.

---

H. Dean Mooty, Jr., Mooty & Associates, PC, Montgomery, AL, for William S. Haynes, Fairlie L. Haynes, Sure Oil Company, Inc., X–Tra Oil Company, Inc., plaintiffs.

John Charles Pierce, Jeffrey U. Beaverstock, Pierce, Ledyard, Latta & Wasden, Mobile, AL, Roianne Houlton Frith, The Law Offices of Roianne, Houlton Frith & Associates, Montgomery, AL, for Gasoline Marketers, Inc., MAPCO Petroleum, Inc., Fictitious Defendant(s), A, B and C, defendants.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This case is before the court on an Agreed Statement of Facts and on briefs.

The Plaintiffs originally filed their Complaint in the Circuit Court for Montgomery County, Alabama, on November 5, 1998. The Defendant [1] filed a Notice of Removal in this court on December 9, 1998. The Plaintiffs subsequently filed a Motion to Remand which was denied by this court February 5, 1999.

The Defendant filed a Motion for Summary Judgment on August 2, 1999, which was denied by this court, after oral argument, on September 20, 1999.

At a pre-trial conference held in this case on September 28, 1999, the parties stipulated that the Plaintiffs' jury demand would be dismissed and that the matter would be submitted to the court for decision on an Agreed Statement of Facts and briefs, and it was so ordered.

## II. *FINDINGS OF FACT*

The parties have submitted to the court an Agreed Statement of Facts which consists of the following:

The Plaintiffs owned approximately fifteen businesses in south and central Alabama and the panhandle of Florida, which sold gasoline and other motor fuel products at retail. In 1974, the Plaintiffs entered into lease agreements with Gasoline Marketers, Inc. whereby the Plaintiffs leased these properties. There were fifteen retail gasoline facilities subject to those leases. The leases were dated May 30, 1974. These retail gasoline facilities were operated by Gasoline Marketers, which eventually became MAPCO Petroleum ("MAPCO").

The only lease locations which are at issue in this case are the locations in Union Springs, Langdale, Andalusia, Selma (Franklin Street), and Demopolis, Alabama. The leases which governed these locations contained twenty-years terms to terminate on April 30, 1994.

At the time that the leases were entered into, all gasoline equipment, including underground storage tanks, was already installed and operational at all of the locations subject to the leases. MAPCO did not replace any of the underground storage tanks at any of the lease locations during the term of the lease.

Upon termination of the leases in June of 1994, the Plaintiffs learned that the Defendant had destroyed a building at the Andalusia location without the permission of the Plaintiffs. MAPCO also closed the retail service stations at Langdale, Union Springs, Andalusia and Selma (Franklin Street), and Demopolis, Alabama prior to the end of the lease term.

MAPCO undertook to close and did close, by removing the tanks, tanks which were located at the Hall and High Street property in Montgomery, Alabama. MAPCO undertook this closure after proper notice to the Alabama Department of Environmental Management ("ADEM"). After the closure, ADEM issued a "No Further Action Letter."

The service stations at the Langdale and Union Springs locations were leased to other companies after being vacated by MAPCO. The property on Franklin Street in Selma, Alabama has been sold and no longer belongs to the Plaintiffs.

Because of various demands by the City of Demopolis, Alabama, the Plaintiffs were forced to undertake the closure of the tanks at the Demopolis location. Plaintiff retained the services of T.T.L., Inc., an environmental engineering firm, to conduct the closure. The closure was effectuated by removal of the tanks and the Plaintiffs

---

1. The Plaintiffs originally named Gasoline Marketers and MAPCO Petroleum, Inc. as separate defendants in this case. From the submissions of the parties throughout this case, however, it appears to be undisputed that Gasoline Marketers merged with Earth Resources Company and was known as MAPCO Petroleum, Inc. It is further apparently undisputed that MAPCO Petroleum, Inc. has been purchased by The Williams Company. There is, therefore, only one Defendant in this case. Because the parties refer to the defendant by different names, to avoid confusion, the court will refer to the defendant in three of its forms as "Defendant," unless otherwise specified.

paid $25,434.59 to T.T.L. for this service. After the closure was completed, ADEM issued a "No Further Action Letter." MAPCO has not reimbursed the Plaintiffs for these costs.

Following demands by the City of Andalusia for weed removal at the Andalusia location, and a district court lawsuit in Covington County against the Plaintiffs and Defendant by the City of Andalusia, MAPCO paid the City of Andalusia its demand for costs associated with said weed removal at the Andalusia location.

Underground storage tanks remain at the Langdale, Union Springs, Andalusia, and Selma (Franklin Street), Alabama locations. All tanks are required by law to be closed. Closure can be accomplished either by removal of the tanks, or by closure in place by filling the tanks with a form of inert material. The regulations requiring closure went into effect on December 22, 1988.

### III. *CONCLUSIONS OF LAW*

There are several questions presented by the parties as to the liability of the Defendant under the leases at issue. One aspect of liability has, however, been agreed to by the Defendant. The Defendant has agreed that it is responsible to the Plaintiffs for the removal of a service station building at the Andalusia location. The parties have, however, asked the court to determine the value of that building. To that end, the Plaintiffs have provided the court with a report from a contractor, Andrew & Dawson, Inc., which states that the replacement value of the service station building that was removed is $21,-919.00. *See* Plaintiff's Exhibit B.

In response to the Plaintiffs' evidence, the Defendant has provided to this court two letters written before the building was removed. The Defendant points out that the second of these two letters contains a handwritten note that the roof of the structure "is in terrible shape" and that something had "fallen off" of the building.

*See* Defendant's Exhibit B. Based on this notation, the Defendant states that it is its contention that the value of the building at the time of demolition was not more than $10,000.00. The Defendant has not, however, provided any evidence to support its mere contention that the purported condition of the building would cause the value of the building to be $10,000.00.

The parties in this case have asked the court to decide the case based on an Agreed Statement of Facts. The parties have not, however, agreed to the fact of the value of the building which was demolished. The only evidence which has been presented to the court which establishes a value for the building has been provided by the Plaintiffs. The court will, therefore, assess the value of the building, as it has been requested to do by the parties, based upon the only evidence of the value of the building presented in the case.

The remaining questions as to liability involve the Plaintiffs' contentions that the Defendant breached the leases at issue by failing to remove storage tanks and conduct closure activities or by failing to indemnify the Plaintiffs for such activities.

The leases [2] at issue state

5. *Maintenance and Alterations.* During the term of this lease it is agreed that G.M.I.[3] may construct any building or buildings as it may desire and shall be responsible for the construction, maintenance, and upkeep. It is also agreed G.M.I. may make any alterations to present building that G.M.I. deems necessary. It is agreed, however, that upon the termination of this lease each of the subject premises leased hereby shall be returned to the Lessor in a condition and with improvements equal to the condition and improvements of each presently existing, reasonable wear and tear and reasonable use thereof excepted.

---

2. The parties have agreed that all of the leases contained the same relevant language.

3. G.M.I. is the abbreviation for Gasoline Marketers, Inc.

At the termination of this lease, all improvements placed thereon by G.M.I. which replace improvements existing on June 1, 1974, shall become the property of the Lessor, and G.M.I. expressly shall not have the right to remove any of the same, including, but not necessarily limited to pumps, tanks, portable or pre-fab station or storage buildings. G.M.I., of course, at the termination of this lease shall have the right to remove its inventory of gasoline, automotive tires and parts and supplies, and improvements made in addition to the improvements which were in existence on June 1, 1974.

The leases also provide that

8. *Indemnity.* G.M.I. will be responsible for all claims for property damages and for personal injuries including death arising on or in said leased premises during the term of this lease and G.M.I. will hold the Lessor harmless from any and all such claims.

The Plaintiffs contend that the lease provision in paragraph five stating that the Defendant was required to return the premises to Plaintiffs "in a condition and with improvements equal to the condition and improvements of each presently existing, reasonable wear and tear and reasonable use thereof excepted," means that the Defendant was obligated to remove or close the underground storage tanks. The Plaintiffs' alternative argument is that the Defendant is bound by the indemnity provision of the leases to reimburse the Plaintiffs for the costs of storage tank removal or closure.

The Defendant argues that closure of the underground storage tanks would have been in violation of the lease provision which states that the lessee does not have the right to remove improvements to the property which replaced improvements existing on June 1, 1974. The Defendant maintains that because the language of the leases "specifically states not to remove the tanks," the requirement which the Plaintiffs seek to impose would cause the Defendant to violate the lease. Defendant's Trial Brief, page 5.

In interpreting the leases at issue, this court is to give the words of the contracts their ordinary meaning, and the intent of the parties is to be derived from the provisions of the contracts themselves. *See Food Service Distributors, Inc. v. Barber,* 429 So.2d 1025, (Ala.1983). The issue of whether a contract is ambiguous or unambiguous is a question of law for a court to decide. *McDonald v. U.S. Die Casting & Dev. Co.,* 585 So.2d 853, 855 (Ala.1991). "If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court...." *Id.* If only one reasonable meaning emerges, the contract is unambiguous. *See Wayne J. Griffin Electric, Inc. v. Dunn Construction Co.,* 622 So.2d 314, 317 (Ala. 1993).

In urging for their interpretations of the provisions at issue, both the Plaintiffs and the Defendant argue that the leases are unambiguous. The Defendant contends that the leases at issue do not obligate it to perform the closures to which the Plaintiffs have pointed, while the Plaintiffs argue that the leases unambiguously require closure activities by the Defendant. The Plaintiffs asserted in submissions in connection with a motion for summary judgment that since each party thinks the lease unambiguously allows it relief, the ultimate ambiguity exists. A contract is not, however, rendered ambiguous simply because the parties do not agree on its proper construction or their intent upon executing the contract. *See Hill Air of Gadsden, Inc. v. Gadsden,* 467 So.2d 230, 233 (Ala.1985).

The Defendant relies on the removal portion of the lease in arguing that the lease is unambiguous and prohibits the very action which the Plaintiff claims should have been taken. The court does not find this reliance to be consistent with the plain language of the lease, however, and cannot conclude that the removal prohibition entitles the Defendant to judgment. First, the parties have stipulated

that the tanks were in place at the time of the leases and were not replacement improvements. The removal provision relied upon speaks only to improvements made by the lessee. Specifically, it states that "all improvements placed thereon by G.M.I. which replace improvements existing on June 1, 1974" become property of the lessor and the lessee shall not have the right to remove them. The tanks at issue were placed on the property by the lessor and were not replaced by the Defendant. The tanks, therefore, are not subject to the removal prohibition. In addition, the lease also contains a provision stating that the "Lessor covenants and agrees with G.M.I. that, at the sole discretion of G.M.I. may remove any presently existing improvements, but subject to the limitations contained in Paragraph 5 hereof." Plaintiff's Exhibit A. According to that provision, the Defendant had the right to remove improvements, within certain limitations.

The Defendant insists that to require the Defendant to pay for the bulldozed building in Andalusia, and to hold that the Defendant violated the lease by not closing the underground tanks is an inconsistent result. The first part of paragraph 5, however, requires that improvements be left in an condition equal to that existing at the time of the lease. This provision covers the bulldozed building which was not replaced. The second part of paragraph 5 is not implicated by either the building or the storage tanks, because neither the building nor the storage tanks replaced an improvement which existed at the time of the lease.

Second, the court does not find that the unambiguous language of the removal prohibition would have been violated had the Defendant closed the storage tanks. The parties agree that closing the tanks would mean that the tanks are either dug up out of the ground and removed, or are filled with inert material so that they cannot be used in the future. *See* Agreed Statement of Facts at page 3. If the tanks could have been filled with inert material, there would have been no "removal" in violation of the plain language of the lease. Accordingly,

the court cannot find that any obligation to close the tanks is inconsistent with the removal prohibition.

Simply because the court does not find persuasive the Defendant's reliance on the removal prohibition in paragraph 5 does not, however, necessarily mean that the court agrees with the Plaintiff's interpretation of the lease. The Plaintiffs state that the Defendant took over fully functional retail gasoline locations in June of 1974 and delivered to the Plaintiffs in June of 1994 locations with underground storage tanks which are non-compliant with applicable rules and regulations. The Plaintiffs argue, therefore, that the non-compliant sites were not "returned to the Lessor in a condition and with improvements equal to the condition and improvements of each presently existing, reasonable wear and tear and reasonable use thereof excepted."

The Plaintiffs have pointed to conduct on the part of the Defendant to support this interpretation. The Plaintiffs state that the Defendant acknowledged its obligation to close the underground storage tanks because it in fact undertook the closure of the tanks at one lease location in Montgomery. The Plaintiffs also state that the Defendant acknowledged its indemnity requirement when, after an indemnity demand by the Plaintiffs, it paid $949.15 to cover the costs of removal of weeds, trash, and other debris from a lease location which had been paid by the Plaintiffs to the City of Andalusia.

The Defendant has explained that it was more financially expedient to pay for the cutting of the weeds and the closure of the tanks than to defend themselves against litigation, but that neither of these actions makes them liable under the prior lease agreements. The court agrees that it cannot conclude that the actions on the part of the Defendant in paying for the weed removal and closure at one location are binding on the Defendant in an interpretation of the lease provisions.

The Plaintiffs have cited this court to no authority which interprets a similar lease

provision in the manner in which the Plaintiffs interpret the lease. Instead, the Plaintiffs direct the court's attention to the cases which they have cited in support of their indemnity argument. The court does not find that cases construing indemnity clauses are helpful in analyzing the maintenance and operations provision in paragraph 5 of the leases at issue. The court finds, however, that it need not reach the question of whether the maintenance provision of the leases imposes liability for closure of the storage tanks because the court finds that the Plaintiffs' alternative argument, based on the indemnity clause, entitles the Plaintiffs to judgment as to liability in this case.

The Plaintiffs' argument is that the indemnity provision of the lease requires the Defendant to reimburse the Plaintiff for costs of closures of tanks on the leased property sites. The indemnity clauses, as set out above, speak to "claims" for "property damages." According to the Plaintiff, all of the tanks were required to be closed prior to the end of the lease term in April 1994, so that when the leases terminated, the Plaintiffs bore the responsibility to close the tanks and should be indemnified for those costs which arose during the pendency of the lease.

The Defendant, on the other hand, contends that the indemnity provision does not apply because the terms of the lease limit that provision to the "term of the lease." The Defendant cites this court to *Boardman Petroleum Inc. v. Federated Mutual Ins. Co.*, 119 F.3d 883 (11th Cir. 1997). In *Boardman*, however, the Eleventh Circuit did not hold that any particular reading of a contract was appropriate under Georgia law, but instead certified several questions to the Georgia Supreme Court. The court did identify a difference in the parties' interpretation which rested on whether coverage under an insurance policy was triggered by exposure to environmental contaminants, or by discovery of the contamination. The Defendant seeks to rely on this analysis, arguing that the Plaintiffs have failed to meet their burden to show that there was any envi-

ronmental contamination at any of the sights at issue during the term of the leases, so that the Defendant is entitled to judgment.

The court agrees that insofar as the Plaintiff might be claiming entitlement to reimbursement for the costs of removing contaminated soil, there is no evidence before the court upon which this court could enter such a judgment. The Defendant's focus on this issue, however, misses the thrust of the Plaintiffs' argument, which is that the mere fact that environmental regulations required the closures of the tanks at issue means that costs have been and will be imposed on the Plaintiff for which the Defendants should indemnity the Plaintiffs. As the Plaintiffs put it, the damages suffered by the Plaintiffs include "the money spent at Demopolis to effect closure of the subject tanks, and the existing obligation to effect closure at the other four locations." Plaintiffs' Trial Brief, page 11. In other words, the Defendant's only argument against the Plaintiffs' interpretation of the indemnity provision is that the Plaintiffs have not proven that environmental contamination occurred during the term of the lease, but the "damage" identified by the Plaintiffs is the cost of complying with the regulatory requirement to close the tanks, not just the cost of any potential environmental contamination. The Defendants have, therefore, failed to address whether the indemnity clause applies to the damages for which the Plaintiffs seek indemnity.

The court has not been cited by either party to any Alabama Supreme Court precedent addressing the interpretation of a similar indemnity provision in a lease. The Alabama Supreme Court has, however, addressed the question of an indemnity clause within a commercial insurance policy. *See Alabama Plating Co. v. United States Fidelity and Guaranty Co.*, 690 So.2d 331, 337 (Ala.1996). In *Alabama Plating Co.*, the defendant argued that the costs of performing environmental remediation ordered by ADEM are not damages under a commercial general liability insur-

ance policy. *Id.* at 336. The court concluded, however, based on other precedent construing such provisions, that environmental remediation costs are "damages" within the meaning of the policy's indemnification clause. *Id.* In addition, Alabama courts enforce indemnity agreements between parties if the contract clearly indicates an intention to indemnify for the damages at issue. *See Mobil Oil Corp. v. Schlumberger,* 598 So.2d 1341, 1345 (Ala. 1992).

Courts from other jurisdictions have determined that costs of environmental remediation fall within similar contractual indemnity provisions which apply to property damages. For instance, in *Joslyn Manufacturing Co. v. Koppers Company, Inc.,* 40 F.3d 750 (5th Cir.1994), the court held that an assignee of a lease was required to indemnify a lessor for environmental damage under an indemnification provision of the lease. The court specifically held that "the indemnification agreements were intended to cover all forms of liability, including liability under [federal and state environmental statutes] even though environmental liability under these statutes was not specifically contemplated at the time of contracting." *Id.* at 754. A district court in this circuit has also determined that an indemnity provision directed to compliance with present or future laws, along with the broad language of a contractual indemnity provision, were broad enough to include unforeseen laws, including environmental laws. *See In re Diamond Manufacturing Co., Inc.,* 164 B.R. 189 (Bkrtcy.S.D.Ga.1994).

When courts apply indemnity provisions to such damages, they examine whether the language of the indemnity clause is broad enough to cover the costs of environmental remediation. The Fourth Circuit has concluded that language in an indemnity clause referring to "any and every claim" is broad enough under state law to cover a claim for environmental clean-up. *Dent v. Beazer Materials and Services, Inc.,* 156 F.3d 523 (4th Cir.1998); *see also Joslyn Mfg. Co.,* 40 F.3d at 754–55 (indemnity clause covering "any and all claims . . . arising from . . . . the occupancy or use of [the] premises").

In addition, courts have applied such indemnity clauses even when the clauses were agreed to before the environmental law at issue was passed. *See Beazer East, Inc. v. The Mead Corporation,* 34 F.3d 206, 211 (3rd Cir.1994)("Other courts that have analyzed pre-CERCLA indemnity provisions have uniformly held that a pre-CERCLA agreement can require one party to indemnify another against CERCLA liability"), *cert. denied,* 514 U.S. 1065, 115 S.Ct. 1696, 131 L.Ed.2d 559 (1995). The Second Circuit, applying New York law, concluded that an indemnity agreement covering "all liabilities, obligations and indebtedness" was broad enough to cover CERCLA liability, even though CERCLA did not exist at the time the contracts were executed. *Olin Corp. v. Consolidated Aluminum Corp.,* 5 F.3d 10, 15 (2nd Cir.1993); *see also Joslyn Manufacturing Co. v. Koppers Company, Inc.,* 40 F.3d at 754 (citing *Kerr–McGee Chem. Corp. v. Lefton Iron & Metal Co.,* 14 F.3d 321, 327 (7th Cir.1994) for the proposition that a party may contract to indemnify another for environmental liability even though CERCLA was not in existence at the time of contracting).

Although the court has not been cited to any contrary precedent by the Defendant in this case, the court recognizes that some courts have found exceptions to the interpretation of indemnity provisions as covering environmental remediation costs when the agreement preceded the environmental laws.[4] For instance, in *Chrysler Corpora-*

---

4. Although not cited by the Defendant, the court notes that there is one case in particular which is factually analogous to the instant case. In *Greenburger v. Commander Packaging Corporation,* 1994 WL 188194, 1994 WL 188194 (N.D.Ill. May 11, 1994), a lessor sought reimbursement of expenses for remov-

ing an underground storage tank and contaminated soil. The court determined that it would not infer that the parties intended the indemnity provision to cover environmental damage.

This court is not persuaded by *Greenburger* that, under a reading of the plain language of

*tion v. Ford Motor Company,* 972 F.Supp. 1097 (E.D.Mich.1997), a district court refused to enforce a contingent liability provision to cover the costs of environmental clean-up. In that case, however, the court engaged in a discussion of the timing of federal and state environmental regulations and concluded that because the contract was entered into in 1954, before awareness of the enforcement of pollution regulations in the 1970's, such liability could not have been contemplated by the parties. *Id.* at 1109. That is not the situation presented here, since the leases were entered into in 1974. The court does not find, therefore, that this reasoning undermines the application of broad indemnity language in leases entered into during the time in which there was federal enforcement of environmental laws. In addition, the *Chrysler* court cited the lease language from the *Olin Corporation* decision for the proposition that "a party may contractually accept all future-arising liabilities." *Id.* at 1110. The court concludes, therefore, that even under *Chrysler,* contractual indemnity provisions can be applied to facts such as those presented in this case.

■ In this case, the lease provision at issue states "G.M.I. will be responsible for all claims for property damages and for personal injuries including death arising on or in said leased premises during the term of the lease and G.M.I. will hold the Lessor harmless from any and all such claims." This language, which includes "any and all claims" is quite broad, and does not impose a limitation on the type of claims contemplated, such as only claims resulting from or contributed to by the lessee. Because Alabama courts both consider environmental remediation costs to

constitute "damages" under insurance policies, and also enforce indemnity agreements which indicate an intention to indemnify for the damages sought to be covered, and because persuasive precedent from other courts applying similar principles of state law has found that broadly-worded indemnity provisions in contracts cover environmental remediation costs, the court is persuaded that the proper construction of the leases at issue in this case is that "any and all such claims" is broad enough to cover the costs of complying with the regulatory requirement of closing underground storage tanks.

■ The remaining question before this court, then, is whether the damages at issue arose "on or in said leased premises during the term of the lease." The Defendant contends that this is the dispositive issue in this case, although in making this argument, the Defendant focuses on environmental contamination and the Plaintiffs' failure to prove damage due to contamination, rather than on the costs of complying with the regulations which are the damages to which the Plaintiffs have pointed.

The parties have not provided the court with copies of, or even citations to, the regulations upon which they rely. The parties have agreed, however, that the underground storage tank regulations at issue went into effect on December 22, 1988. *See* Agreed Statement of Facts, page 3. The obligation to close the tanks was, therefore, imposed at that time, and was not merely imposed once the leases were terminated. Although the Defendant has attempted to draw a distinction between the point in time at which conduct occurs

the lease at issue in this case, the indemnity agreement would not cover closure of the storage tanks. The *Greenburger* court does not explain its reasoning but merely says, rather cryptically, "This Court will not infer, and indeed Greenburger does not dispute, that it was the intent of the parties that the indemnity provision cover environmental damages occasioned by laws passed some nine to sixteen years after the signing of the lease." *Id.* at

*3. In addition, the case has been distinguished in another decision in the same district on the ground that when an indemnity provision broadly applied to all damages and claims, the environmental regulations which were passed during the lease were included in the indemnity contemplated by the parties. *See Singer v. Bulk Petroleum Corp.,* 9 F.Supp.2d 916 (N.D.Ill.1998).

which ultimately leads to damage, and the point in time at which the actual damage occurs, such a distinction is not relevant to the claims in this case, because there is no dispute that the regulatory requirement of closing the tanks arose during the term of the lease. The Defendant has not disputed that the effect of the regulations was to impose a requirement that the tanks at issue be closed. Also, the Defendant has agreed that the regulations required closure during the term of the lease. The obligations, therefore, arose "during the term of the lease."

Because the Defendant has agreed that environmental regulations imposed a closure requirement, and because it is undisputed that this requirement arose during the pendency of the leases, the court concludes that the Plaintiffs are entitled under the indemnification provisions of the leases at issue to indemnification for the costs of closing the tanks. In so concluding, the court has not been presented with, and consequently does not address, the questions of whether there is a duty to indemnify for removal of contaminated soil, or whether some future obligation to indemnify might arise if a government agency were to require removal of contaminated soil.

## IV. DAMAGES

The Plaintiffs have requested relief in the form of monetary damages in the amount of $47,353.59, which they state includes the cost of the tank closure and the value of the building which was removed at the Andalusia site. The Plaintiffs also ask for relief directing the Defendant to effect proper closure of the tanks at the remaining four locations. Finally, the Plaintiffs request that the court award them a reasonable attorney's fee as provided in paragraph 13 of the leases at issue.

Although the parties agreed to submit this case to the court based on an Agreed Statement of Facts, no agreed-upon facts have been submitted as to the amount of damages to which the Plaintiffs are entitled, other than the cost of the closure of the tanks at Demopolis.

With regard to the value of the building which was removed at the Andalusia site, based on the only evidence as to value which has been provided in this case, the court finds the value of the building to be $21,919.00.

As to the value of the tank removal in Demopolis, the Defendant has not contested that these damages were the result of tank closure. Therefore, the court finds that the Plaintiffs are entitled to the amount agreed upon by the parties for the Demopolis closure which is $25,434.59.

As to the Franklin Street location in Selma, Alabama, no evidence has been presented to the court that this site, which has been sold by the Plaintiffs, is still the responsibility of the Plaintiffs. Because the Plaintiffs bear the burden of proof to show that they have incurred or will incur damages for which they should be indemnified, the court finds that, since there is no evidence showing that the Plaintiffs still bear responsibility for that location, no damages may be awarded for closure of the tanks at the Franklin Street, Selma, Alabama location.

As for the other tank closures which the Plaintiffs may have to perform, the court cannot award an amount as indemnification until such closures are effected. Because the parties have not submitted agreed-upon facts as to the costs of such closures, the court is left with no guidance as to how to award damages. Accordingly, the parties are given until November 17, 1999 to submit an agreed upon figure to the court as to the cost of performing the closure of the tanks on those three sites. If no figure can be agreed upon, then the parties are directed to submit evidence as to the estimated costs of such closures by November 17, 1999 and the court will make an award of damages based on that evidence.

The Plaintiffs' final form of requested relief is an attorney's fee. The leases at issue contain paragraph 13 which states

Should this lease be placed in the hands of an attorney for default or breach, or for the enforcement of any rights herein reserved or stipulated, G.M.I. agrees to pay all costs incident thereto, including a reasonable attorney's fee.

The court will, therefore, enforce this provision as written and award reasonable attorney's fees to the Plaintiffs. The parties are given until November 17, 1999 to submit an agreed-upon figure for attorney's fees. If the parties are unable to agree, the Plaintiffs may submit at that time a fully itemized claim, together with a statement that good faith efforts have been made to reach an agreement, without success, and the Defendant will have until November 24, 1999 to respond to the claim.

## V. CONCLUSION

For the reasons discussed above, it is ORDERED that judgment will be entered in favor of the Plaintiff and against the Defendant in the amount of $47,353.59 for the costs of the bulldozed building at the Andalusia location and the closure costs at the Demopolis location. The parties are given until **November 17, 1999** to submit to the court an agreed-upon amount of, or evidence as to, the costs of closure of the tanks at the Union Springs, Langdale, and Andalusia locations and attorney's fees. The court will award judgment as to the total cost of indemnification, the value of the bulldozed building, and attorney's fees in a separate Order after receiving the parties' submissions.

### *MEMORANDUM OPINION AND ORDER*

### I. BACKGROUND

This cause is before the court on the Defendant's Motion to Reconsider filed on December 7, 1999 (Doc. # 34).

At a pre-trial conference held in this case on September 28, 1999, the parties stipulated that the Plaintiffs' jury demand would be dismissed and that the matter would be submitted to the court for decision on an Agreed Statement of Facts and

briefs, and it was so ordered. The parties then submitted agreed-upon facts including the facts that there were underground storage tanks at locations in Langdale. Union Springs, Andalusia, and Selma (Franklin Street), Alabama which were subject to lease agreements between the Plaintiffs and the Defendant. In their submissions to the court, the parties neither cited to nor argued the effect of any of the applicable regulations. Instead, they agreed that the storage tanks at issue were required by regulation to be closed in 1988. Agreed Statement of Facts, page 3. The parties represented to the court that the issues to be decided by this court were contract questions involving the interpretation of the provisions of the leases at issue.

After the court issued its Memorandum Opinion and Order and stated it would be entering a judgment in favor of the Plaintiffs in this case, the Defendant secured additional legal representation and filed a Motion to Reconsider. In that Motion, the Defendant argues that this court should disregard its earlier ruling because the court's order relied on the "parties' erroneous stipulations. . . ." Motion to Reconsider, page 1.

## II. DISCUSSION

██ District courts are necessarily afforded substantial discretion in ruling on motions for reconsideration. *Sussman v. Salem, Saxon & Nielsen,* 153 F.R.D. 689 (M.D.Fla.1994). Because "litigants cannot be repeatedly called upon to backtrack through the paths of litigation," reconsideration of an order is an extraordinary remedy to be employed sparingly. *Id.* at 694.

██ In support of its motion, the Defendant states that inaccurate stipulations of law and fact led this court to an erroneous result. "As a general rule, a stipulation is a judicial admission binding on the parties making it, absent special considerations." *Western Atlas International, Inc. v. Kiff Industries, Inc.,* 1990 WL 211558, No. 89–

3238 (E.D.La. Dec. 6, 1990); *see also Parks v. American Warrior, Inc.,* 44 F.3d 889, 894 (10th Cir.1995). While stipulations are not to be set aside lightly, courts have broad discretion in determining whether to hold a party to a stipulation. *See Morrison v. Genuine Parts Co.,* 828 F.2d 708 (11th Cir.1987), *cert. denied,* 484 U.S. 1065, 108 S.Ct. 1025, 98 L.Ed.2d 990 (1988).

The Defendant has argued that this court should not be bound by the parties' stipulation that an underground storage tank closure requirement was imposed by regulation in 1988. The Defendant argues that the parties erred in stipulating to this date. The Defendant has cited an Eleventh Circuit decision in which the court approved the tax court's determination that it was not bound to stipulation as to an incorrect date of a wire transfer. *See Blohm v. Commissioner of Internal Revenue,* 994 F.2d 1542 (11th Cir.1993). In that case, the stipulation was contradicted by record evidence establishing that the date was one day earlier. *Id.* at 1552. In the instant case, however, the entire case was presented to this court on stipulated facts. Evidence was not presented by the parties in this case which would have contradicted the stipulation that the obligation to close the storage tanks was imposed in 1988.

■■■■ While it is true that parties cannot be bound to an incorrect stipulation as to controlling law, parties will be held to a stipulation which narrows the issues for consideration before the district court. *See United States v. One 1978 Bell Jet Ranger Helicopter,* 707 F.2d 461, 463 (11th Cir.1983)("A stipulation, being a formal agreement conceding or admitting matters incident to judicial proceedings, is to be encouraged as a means of simplifying issues and avoiding unnecessary proof.") (citation omitted). In this case, the parties presented this court with issues of contract interpretation and had every opportunity to present relevant facts. They agreed that a duty to close underground storage tanks was imposed in 1988, and then asked this court to interpret lease agreements and to decide upon whom the closure duty was imposed. After careful consideration of the parties' arguments, and after independent research, the court determined that the obligation acknowledged by the parties was imposed upon the Defendant. The Defendant cannot now, after having received an unfavorable ruling, change the issue presented to the court and require a factual inquiry as to the closure obligation.

■■■■ In addition, not only have the facts relied upon by the Defendant in its Motion to Reconsider not been previously presented to the court, but the Defendant also has not provided this court with any explanation as to why the facts upon which the Defendant now relies were not available to it at the time that it made its earlier submissions to the court. Additional facts that should have been raised in the first instance are not appropriate grounds for a motion for reconsideration. *See Villaflores v. Royal Venture Cruise Lines, Ltd.,* No. 96–2103, 1997 WL 728098, at *2 (M.D.Fla. Nov. 17, 1997), *aff'd in part, vac'd in part, Wilkins v. Commercial Inv. Trust Corp.,* 153 F.3d 1273 (11th Cir.1998).

The Defendant also makes additional legal arguments for why the closure obligation should not be imposed upon it, stating that a new scheduling order should be entered to "permit the parties to fully represent a complete and accurate legal and factual argument of the matters at issue to the Court on briefs." Motion for Reconsideration, page 14. Additional legal arguments which could have been advanced before the court issued its opinion are not, however, the proper subject of a motion for reconsideration. *See American Home Assurance Co. v. Glenn Estess & Assocs., Inc.,* 763 F.2d 1237, 1239 (11th Cir.1985) (considering new arguments post-order affords parties "two bites at the apple"); *Renfro v. City of Emporia, Kan.,* 732 F.Supp. 1116, 1117 (D.Kan.1990), *aff'd,* 948 F.2d 1529 (10th Cir.1991) (noting that a party who fails to present its strongest case in the first instance generally has no

 

right to raise new theories or arguments in a motion for reconsideration).

The Defendant also argues, in a footnote, that the Plaintiffs' damages relating to the removal of a building at the Andalusia site are speculative and may lead to a double recovery. As the court explained in its earlier order, the Defendant agreed that it is responsible to the Plaintiffs for the removal of a service station building at the Andalusia location, and the parties asked the court to determine the value of that building. There was never any argument raised that these damages were not properly recoverable by the Plaintiffs. Furthermore, while the Plaintiffs provided the court with a report from a contractor placing a value on the service station building that was removed, the Defendant made an unsupported contention as to the value of the building. The court, therefore, assessed the value of the building, as it had been requested to do by the parties, based upon the only evidence of the value of the building presented in the case. Any facts or arguments as to the value of the building should have been raised prior to the time of this court's earlier order, and no explanation has been given for why such facts and arguments were not presented.

The court emphasizes that the parties in this case agreed to the facts and to the issues to be presented to the court. The Defendant has not given this court any reason why the facts which it now contends are the correct facts were not available to it at the time it agreed to a statement of facts. Nor has the Defendant offered any explanation as to why legal arguments now presented to the court could not have been made before the court entered its Order. This court expended considerable time listening to oral argument, evaluating briefs, and researching questions of contract liability and indemnity in order to resolve the questions presented to it. Whether or not the additional facts and arguments now advanced by the Defendant would have resulted in any differences in the court's ruling, the court does not find that it is required by law to revisit any issues in this case. Instead, the court finds that to reopen this case, in the absence of any reason why the Defendant previously failed to present the facts and arguments now presented, would be a waste of judicial resources and would set a most undesirable precedent of allowing a losing litigant to simply try again with difference evidence and arguments. The Motion to Reconsider is, therefore, due to be DENIED.

### III. *CONCLUSION*

For the reasons discussed above, it is ORDERED the Motion for Reconsideration is DENIED.